# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

CHERYL Y.  TURNER,
      Plaintiff,

v.                                  No: 3:07cv482/MD

MICHAEL J.  ASTRUE,
Commissioner of Social Security,
      Defendant.
_____

## MEMORANDUM DECISION and ORDER

This case has been referred to the undersigned for disposition based on the parties' consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) (doc. 18).  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Turner's application for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed.

## PROCEDURAL HISTORY

This appeal involves two applications made under the Social Security Act. The first is an application for disability insurance benefits under Title II of the Act,

42 U.S.C. §§ 401 *et seq.* (Tr. 81-83). The second is an application for Supplemental Security Income benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* (Tr. 380-88). Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration under Title II. Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), provides for judicial review to the same extent as the Commissioner's final determination under section 205. Plaintiff, Cheryl Turner, subsequently filed applications under Title II and Title XVI on October 30, 2003, which the administrative law judge ("ALJ") consolidated with the pending claims pursuant to the Appeals Council's order on remand (Tr. 5c, 446, 480-82, 1193-1203).

Ms. Turner's applications for disability benefits under Title II and Title XVI were denied initially (tr. 62, 64-66, 391-94) and upon reconsideration (tr. 63, 69-71, 395-99). On July 25, 2001, following a hearing, an ALJ found Ms. Turner was not under a "disability" as defined in the Social Security Act (tr. 13-23). On May 31, 2002, the Appeals Council denied Ms. Turner's request for review (tr. 6-7). Ms. Turner then filed a civil action before this Court which resulted in an order on September 7, 2004, remanding the case to the Commissioner for further proceedings at step two of the sequential evaluation process (tr. 435-41). On November 15, 2004, the Appeals Council remanded the case to another ALJ pursuant to the Court's order (tr. 446-47). On October 19, 2006, after three supplemental hearings, an ALJ rendered a decision in which he found Ms. Turner was not under a "disability" as defined in the Act (tr. 5-5z). The Appeals Council denied Ms. Turner's request for review on September 22, 2007 (tr. 5ccc-fff). Thus, the October 19, 2006 decision of the ALJ stands as the final decision of the Commissioner. This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Turner met the requirements for disability insurance through December 31, 2004 but not thereafter; that she had severe impairments of degenerative disc disease of the lumbar spine, hypertension, and adjustment disorder with mixed anxiety and depressed mood secondary to her medical condition but did not have an impairment or a combination of impairments that met or medically equaled an impairment listed in 20 C. F. R. Part 404, Subpart P, Appendix 1; that she had the residual functional capacity to perform unskilled light work; that she could do her prior relevant work as a cleaner or housekeeper as that job is performed in the national economy; and that she was not under a disability as defined in the Act (tr. 5C-5Z).

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).  There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).  Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence.  *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).  Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must

be affirmed.  *Ingram*, 496 F.3d at 1260;  *Miles*, 84 F.3d at 1400.  Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *Moore*, 405 F.3d at 1211 (citation omitted).  In determining whether substantial evidence exists, the court  must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence.  *Moore*, 405. F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

 A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or
        equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past
        relevant work?

5.      Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate
both a qualifying impairment or disability and an inability to perform past relevant
work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th
Cir.1985)).  If the claimant establishes such an impairment, the burden shifts to the
Commissioner at step 5 to show the existence of other jobs in the national economy
which, given the claimant's impairments, the claimant can perform.  *Doughty v.
Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir.
1987).  If the Commissioner carries this burden, claimant must prove that she cannot
perform the work suggested by the Commissioner.  *Doughty,* 245 F.3d at 1278 n.2;
*Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

From 1999 through September 11, 2006, Ms. Turner was treated primarily by
the Department of Veterans Affairs ("VA"), where she was followed for long term
medical problems to include chronic low back pain with radiculopathy, neck pain
with cervical spondylosis with radiculitis, undifferentiated connective tissue disease,
knee pain with osteoarthritis, hip pain with trochanteric bursitis, fibromyalgia with
sleep disorder, polyarthralgias, hypertension, anemia, chest pains, headaches, and
obesity, in addition to mental illnesses (tr. 267-372, 719-925, 945-1001, 1015-1072,
1112-1156, 1159-1174, 1183-1192).  She received mental health treatment at the VA
for depression, anxiety, and panic disorder with agoraphobia (tr. 270-271, 280, 281,
286, 287, 305, 306, 348-351, 354, 364, 720-721, 873, 889, 898, 950, 999-1000, 1035-

1037, 1127-1129).  She was treated by VA rheumatologists for her undifferentiated connective tissue disease, with symptoms of diffuse musculoskeletal pain and objective findings of positive ANA, high C-reactive protein, and persistently high sedimentation rate (tr. 719-721, 729-731, 748-749, 765-767, 779-780, 817-818, 822-824, 826-828, 830, 834-835, 841-842, 851-853, 857, 908-910, 1166-1168, 1187-1189).  She was prescribed Prednisone (a steroid) and Plaquenil (for rheumatoid arthritis) (tr. 721, 726, 766, 827, 830, 817-818, 834-835, 852, 856-857, 861-862, 876-877, 904, 910, 1036, 1166).

Ms. Turner was also seen for both physical and mental consultative evaluations for the state agency on multiple occasions.  On February 26, 2004, Richard W. Lucey, M.D. diagnosed hypertension, history of lumbar disc disease with probable associated degenerative joint disease and chronic myofascial low back pain, history of chronic anemia, history of chronic depression, and history of undifferentiated connective tissue disorder (tr. 658-659).  C. W. Koulisis, M.D., conducted an orthopedic evaluation on April 3, 2006, noting complaints of chronic low back pain but a neurologically intact physical examination with range of motion maintained (tr. 1092-1102).

Richard E. Doll, Ph.D., conducted a psychological evaluation for the state agency on May 10, 2000 (tr. 235-237).  Dr. Doll noted no serious deficiencies in concentration or persistence, and diagnosed depression secondary to chronic pain (provisional) (tr. 236).  He stated it appeared that Ms. Turner's major problems were physical in nature (tr. 237).  In a psychological evaluation report for the state agency dated March 15, 2004, John W. Keller, Ph.D., diagnosed agoraphobia "assuming that the information I received is correct," fibromyalgia, and mild depression (tr. 663).  On March 9, 2005, Susan A. Danahy, Ph.D., conducted a psychological evaluation for the state agency to include administration of the MMPI-2 (tr. 932-938).  Dr. Danahy stated Ms. Turner's MMPI-2 profile was "clearly invalid" with all scores elevated,

noting "it is possible that the MMPI reflects a true 'cry for help.'" She diagnosed a pain disorder associated with degenerative disc disease, depression, and anxiety; rule out mild mental retardation; chronic pain secondary to degenerative disc disease; and high blood pressure (tr. 935).  Dr. Danahy stated Ms. Turner's disability appeared to be a combination of medical and psychiatric factors.  She noted Ms. Turner had finished high school but came across as intellectually somewhat limited and concrete in her thinking – "In fact, the MMPI profile which she obtained does not appear to be valid and I question whether she understood the questions." (Tr. 935). Dr. Danahy completed a form to indicate marked functional limitations in the ability to interact appropriately with the public, with supervisors, or with coworkers, to respond appropriately to work pressures in a usual work setting, and to respond appropriately to changes in a routine work setting (tr. 938).  She also stated "Claimant manifests concrete thinking. Intellectual functioning estimated to be Borderline at best.  Would not be able to exercise independent judgment on a job." (Tr. 937).

Martha M. Sarasua, M.D., Ph.D., a psychiatrist, saw Ms. Turner for a psychiatric evaluation for the state agency on October 25, 2005 (tr. 1005-1014).  She diagnosed major depression, recurrent, moderate; pain disorder associated with degenerative disc disease, SLE, depression, and anxiety; panic disorder with agoraphobia; cognitive disorder, NOS; borderline intellectual functioning; and learning disorder, NOS (tr. 1008).   She felt that Ms. Turner appeared to have longstanding limitations in intellectual functioning which represented a combination of learning disorders with possible borderline intellectual functioning, and a deterioration of cognitive functioning over the previous few years with new onset of other medical symptoms. She noted Ms. Turner also carried a long term history of psychiatric treatment for depression, anxiety, panic attacks, mild paranoia and mild auditory hallucinations, and a longstanding history of chronic pain. Her prognosis

was poor for significant improvement (tr. 1009).   On her assessment form Dr.
Sarasua indicated numerous moderate, marked to extreme functional limitations (tr.
1011-1013).

Dr. Doll reevaluated Ms. Turner for a state agency psychological evaluation
on April 13, 2006, and administered the WAIS-III, WRAT-3, and MMPI-2 (tr. 1085-1091).
Ms. Turner's WAIS-III scores documented a valid verbal IQ of 76, performance IQ of
70, and full scale IQ of 71, the latter placing her in the range of borderline intellectual
functioning.  Her academic achievement scores, also noted to be valid, documented
a reading level at grade 3, spelling skills at grade 6, and arithmetic skills at grade 4
(tr. 1086-1087).  Dr. Doll noted a significantly elevated validity scale on the MMPI-2,
which "suggests that this administration should be considered invalid." (Tr. 1087).
His mental diagnoses included panic disorder with agoraphobia and borderline
intellectual functioning (tr. 1088).  He noted that Ms. Turner's functional ability in
terms of adaptation and ability to tolerate stress in the work environment appeared
to be poor (tr. 1088).  He indicated the presence of moderate limitations in the ability
to understand, remember, and carry out detailed instructions, respond appropriately
to usual work pressures, and respond appropriately to changes in a work setting (tr.
1089-1090).

On September 11, 2000, Storne L. Shively, Ph.D., a VA mental health treatment
provider, completed a Mental Residual Functional Capacity ("MRFC") questionnaire
in which he indicated Ms. Turner had repeated episodes of decompensation;
frequent deficiencies of concentration, persistence, or pace; moderate to marked
restrictions in the ability to understand, carry out, and remember instructions,
respond appropriately to customary work pressures, and perform simple tasks; and
moderate limitations in activities of daily living, the ability to respond appropriately
to supervision, and the ability to perform repetitive tasks (tr. 264-266).  He indicated
side effects from medications: "Trazodone can make her groggy." (Tr. 266).  He felt

Ms. Turner had "significant concentration, [attention and] memory problems related to her depression and panic disorder with agoraphobia. She has been fired from several jobs for making major errors related to memory and concentration problems." (Tr. 265).

Mary D. Surrett, RNP, also a VA mental health treatment provider, completed a form on May 18, 2005, noting that Ms. Turner had marked limitations in the ability to respond appropriately to customary work pressures, and moderate limitations in activities of daily living, maintaining social functioning, and in concentration, persistence or pace (tr. 1002-1004).   She indicated medication side effects of nervousness, drowsiness, and memory impairment (tr. 1004).

John F. Duffy, Ph.D., a clinical psychologist, reviewed the most recent findings of Dr. Doll in a report dated August 30, 2006 (tr. 1157-1158).   Specifically, he discussed Ms. Turner's assessed reading level as it related to the validity scale of the MMPI-2:

> There is consistent literature to indicate that a 3rd grade word reading level is insufficient to allow for valid test results on the MMPI-II.  When the F scale is significantly elevated into the Invalid range as occurred in Dr. Doll's evaluation and in [Dr. Danahy's] evaluation of March 9, 2005, the reasons for the elevation may be attributed to mental confusion, purposeful exaggeration of symptoms, carelessness, or lack of reading ability.  In her report, Dr. Danahy indicated that Ms. Turner "did seem able to read the first few items of the MMPI."  However, the professional literature cautions against "merely presenting the first few items as these tend to be relatively easy items" on the MMPI-II.  In fact, Dr. Danahy wrote in her report "I question whether she understood the questions" in reference to the MMPI-II.

(Tr. 1157).  Dr. Duffy continued: "Clearly, Ms. Turner's reading skills preclude the ability to take the MMPI-II by reading it." (Tr. 1157).  Dr. Duffy stated Ms. Turner's low IQ scores could also "be considered as supportive of an overall diagnosis of Mild Mental Retardation rather than Borderline Intellectual Functioning" due to measurement error of 5 points, noting it was possible to diagnose retardation if

individuals exhibited significant deficits in adaptive behavior.  He stated the records from Dr. Sarasua and Dr. Doll supported marked impairments in reading, functional academic skills, and social/interpersonal and work-related functioning.  He further noted that subaverage intellectual functioning and concurrent deficits in adaptive functioning confirmed a diagnosis of mild mental retardation in accordance with DSM-IV standards, and also met the regulatory definition of mental retardation (tr. 1158).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to find that plaintiff's mental condition met Listing 12.05C, and in improperly determining her residual functional capacity, and that plaintiff was disabled from her onset date as a matter of law.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1.    Listing 12.05C.

The regulations promulgated by the Commissioner at Appendix 1, Subpart P, set out specific physical and mental conditions that are presumptively disabling.  If a claimant meets the requirements of one of the listings, no further proof of disability is required.  *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Ms. Turner contends that she has met the requirements of listing 12.05C, and that the ALJ erred as a matter of law in finding otherwise.

The Commissioner's regulations explain what must be proven in order for a claimant to show mental retardation under Listing 12.05 as follows:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorder listings.  Listing 12.05 contains

> an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If your impairment satisfies the diagnostic description in the introductory paragraph <u>and</u> any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C. F. R., Pt. 404, Subpt. P, App. 1, § 12.00 (emphasis added).  Thus, listing 12.05C has three components, all of which must be met: (1) a general component - significantly subaverage functioning with certain deficits, (2) a valid IQ score of 70 or lower, and (3) some other physical or mental impairment that imposes a work-related limitation.[1]   The question for this court, therefore, is whether there was substantial record evidence to support the ALJ's finding that Ms. Turner did not meet *at least one* of these requirements.

In order to meet the general component, Ms. Turner must show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period."  Listing 12.05.  The ALJ discussed whether Ms. Turner had met this part of the required showing, and found that she had not:

> The evidence of record shows that the claimant graduated from high school in regular classes, that she attended three semesters of junior college classes, that she was academically capable of meeting the

---

[1]**12.05 *Mental Retardation*:**  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

* * *

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

> **minimum standards for enlistment in the United States Army, that she successfully performed semi-skilled work in the past, and that she has proven that she has been capable of successfully handling her own money and paying bills, effectively running a household that, for the past several years, has included her disabled husband and her grandchildren.  The evidence clearly establishes that the claimant is independent in her daily activities and that *she has no significant deficits in her adaptive functioning*.  For the stated reasons, the Administrative Law Judge finds that the claimant's true level of intellectual functioning is beyond that of the borderline range.**

(Tr.  5S) (emphasis added).

Ms. Turner contends that the foregoing findings were not supported by substantial record evidence.  She first argues that because the Commissioner did not adopt the *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition (DSM-IV), a clinical diagnosis of mental retardation is not necessary, citing *Maresh v. Barnhart*, 431 F.3d 1073, 1075 (8th Cir. 2005), superceded by *Maresh v. Barnhart*, 438 F.3d 897 (8th Cir. 2006).  Accepting Ms. Turner's argument for purposes of discussion that no formal diagnosis is required, it is clear that the ALJ did not base his determination on the lack of a formal diagnosis.  Rather, he based his determination on a review of the evidence concerning Ms. Turner's general functioning generally.

Ms. Turner contends that this was unsupported, but she does not directly address the general component.  Rather, she focuses on the other two components: the required IQ score and the physical disabilities (doc. 21, pp. 11-19). Her argument is directed almost entirely at showing that the ALJ erred in rejecting her IQ scores. That, however, misses the point.  If this court accepts, for purposes of discussion, that Ms. Turner had the required 70 IQ score, the issue under review requires more. Ms. Turner says that the ALJ "mischaracterized or took out of context Ms. Turner's testimony including that regarding her daily activities."  (*Id.* at 11).  In that regard, she says that the ALJ erroneously found that Ms. Turner had performed semi-skilled

work in the past, because all her work was of short duration.  She also argues that it was error for the ALJ to rely on her having met the minimum requirements for enlisting in the Army because she served for only three months and was separated for "Unfitness or Unsuitability."  (*Id*. at 17).

Ms. Turner's argument on whether she did or did not do semi-skilled work, or whether she succeeded in the Army, or generally functioned in society, are matters of weight.  This court does not re-weigh the evidence.  Ms. Turner's argument that the evidence preponderates in her favor may be correct, but that is not the standard this court applies.  There was substantial record evidence to support the ALJ's findings that Ms. Turner (1) graduated from high school in regular classes, (2) attended three semesters of junior college classes, (3) was academically capable of meeting the minimum standards for enlistment in the United States Army, (4) successfully performed semi-skilled work in the past, and (5) had been capable of successfully handling her own money and paying bills, effectively running a household that, for the past several years, has included her disabled husband and her grandchildren.

Ms. Turner further argues that the ALJ applied the incorrect legal standard when he found that Ms. Turner had no "significant" deficits in adaptive functioning.  Ms. Turner asserts that "significant" deficits are not required.  While the regulation does not use that term, it is not a term of consequence here.  That is because the ALJ was looking at Ms. Turner's life history for evidence that she had "significantly subaverage functioning," and concluded that she did not.  Taken together, the evidence supported the ALJ's finding of the lack of "significantly subaverage functioning."  Ms. Turner therefore did not meet that component of Listing 12.05C.

2.    Plaintiff's residual functional capacity.

Ms. Turner next contends that the ALJ erred in determining that she had the residual functional capacity to perform the physical demands of light work, and the

mental demands of unskilled work.  The Commissioner's regulations define "light work" in part as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  Ms. Turner argues that there was no substantial record evidence to support the ALJ's finding that she could meet these requirements.  She further argues that the evidence did not support a finding that she had the mental capacity to perform work at any level, and that the ALJ erroneously rejected the opinions of her treating and examining physicians and psychologists.

Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  Where

a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11ᵗʰ Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11ᵗʰ Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; consistency with the record as a whole; 5) specialization in the medical impairments at issue; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.  Failure to do so is reversible error.  *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11ᵗʰ Cir. 1986));[2] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11ᵗʰ Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Ms. Turner's argument that the ALJ erred in considering her mental impairments, in combination with her physical limitations, has merit.  With mental impairments, the Commissioner has provided additional guidance.  "Since mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and worklike settings."[3]  In addition to the five-step sequential evaluation outlined in 20 C.F.R. §§ 404.1520, 416.920, the Commissioner promulgated 20 C.F.R. §§ 404.1520a, 416.920a, to evaluate mental impairments by utilization of a "special technique."  He

---

[2] *MacGregor* further held that "[w]here the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

[3] Social Security Ruling (SSR) 96-8p.

explains: "Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation." 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1) (2008). Thus, the mental RFC is defined as the "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C. F. R. §§ 404.1520a(c)(2), 416.920a(c)(2) (2008).

An individual "must be able to perform a full range of work on a sustained basis 'in the sometimes competitive and stressful conditions in which real people work in the real world.'" *Gavin v. Heckler*, 811 F.2d 1195, 1198 (8th Cir. 1986), *citing McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982). "As has previously been observed, 'employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs by hiring someone with severe mental problems.'" *Gavin*, 811 F.2d at 1198, *citing Thomas v. Celebrezze*, 311 F.2d 541, 546 (4th Cir. 1964).

The "special technique" requires an assessment of a person's ability to function in four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. These four areas are deemed essential to work. The Commissioner explained:

> The American Psychiatric Association, under contract to us, conducted an independent scientific assessment of the adult mental disorders listings which were revised in August 1985. The findings from the assessment, as reported in 1987, supported continued use of these four criteria when predicting an individual's inability to do any gainful activity.[4]

> In addition to the areas deemed essential to doing any gainful activity:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and

---

[4]*Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50745, 50755-56 (Aug. 21, 2000).

> remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15, *supra*, note 36.  Thus, even if an individual's impairment is not of listing-level severity, mandating a finding of disabled at Step 3 of the sequential evaluation, there can still be such a finding at Step 5. This is due to an RFC, including mental limitations, which would prevent the individual from doing past relevant work, followed by a determination that she is unable to make a vocational adjustment to other jobs existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920; 404.1560, 416.960 (2008).

The ALJ rejected the opinions of Dr. Doll, Dr. Danahy, Dr. Sarasua, and Dr. Shively, each of whom had either treated or examined Ms. Turner. He relied instead on the opinions of nonexamining state agency psychologists, who were not privy to all of the more recent evidence (tr. 5U).  The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight.  *See* 20 C. F. R. § 404.1527(d)(1);  *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005).  The ALJ rejected the opinions of these doctors without adequate justification, essentially by disagreeing with their diagnoses and opinions.  The ALJ cannot substitute his judgment for that of the medical experts. *Freeman v. Schweiker*, 601 F.2d 727, 731 (11th Cir. 1982).  The ALJ cited to Ms. Turner's work and other accomplishments in the *past*, which supported his finding that she did not meet the onset-before-age-22

requirement of mental retardation.  The only *present* activities upon which he relied were her daily activities.

Ms. Turner also argues that the ALJ's recitation of her activities of daily living was filled with misstatements and omissions as to his analysis of the validity of Dr. Doll's IQ scores.  She asserts that this affected his evaluation of her credibility and her residual functional capacity, and that he failed to consider the Commissioner's policy: ". . . if you do a wide range of activities of daily living, we may still find that you have a marked limitation in your daily activities if you have serious difficulty performing them without direct supervision, or in a suitable manner, or on a consistent, useful basis, or without undue interruptions or distractions. 20 C.F.R. Pt. 404, Subpt. P., App. 1., § 12.00C.1 (2008).

Regardless of whether the ALJ's assessment was a complete and accurate depiction of Ms. Turner's daily activities, the activities he cited  - some grocery shopping, caring for her personal needs, preparing simple meals, paying some bills, doing light household chores - are normal and usual activities for a disabled person and should not be the basis for an adverse mental residual functional capacity. "[D]isability claimants should not be penalized for attempting to lead normal lives . . . . 'Many home activities are not easily transferable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.'" *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). Another relevant consideration in assessing Ms. Turner's credibility is her prior work record, doing jobs of short duration, which would support her inability to sustain work performance (tr. 97, 105, 139-140, 483- 493, 555-556, 563-564).  For all of the foregoing reasons, the court finds that the ALJ's decision denying disability was not supported by substantial record evidence, and that plaintiff is entitled to relief.

This court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." Title 42 U.S.C. § 405(g). Remand is ordinarily appropriate for rehearing if the Commissioner failed to apply the law and regulations, or where the taking of additional evidence is necessary. It is the law of this Circuit that where the ALJ fails properly to discount the opinion of the treating physician, he is held as a matter of law to have accepted it as true. *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986). When evidence has been fully developed and points unequivocally to a specific finding, the court may enter the finding that the Commissioner should have made. The court can reverse without remand where the Commissioner's decision is in plain disregard of the law and evidence. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *MacGregor, supra; Hale, supra*. Moreover, the failure to apply the correct legal standard is grounds for reversal, not remand. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1983).

Here Dr. Shively's opinion on Ms. Turner's various mentally-based impairments as reflected in the MRFC leads inescapably to the conclusion that plaintiff's mental impairments prevented her from working. The ALJ improperly rejected this opinion, among others, and Dr. Shively's opinion is therefore held to be true. Therefore, the record has been fully developed, and Ms. Turner is entitled to the award of the benefits due her.

Accordingly, it is ORDERED as follows:

1.      The decision of the Commissioner is REVERSED.

2.      The Commissioner shall compute and pay benefits to plaintiff based on her applications of February 14, 2000 and March 21, 2000.

3.      The clerk shall enter judgment in favor of plaintiff and close the file.

**Done and ordered at Pensacola, Florida, this 28th day of January, 2009.**

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**